IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| EIDOS DISPLAY, LLC, EIDOS III, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> CHI MEI INNOLUX CORPORATION, CHI MEI OPTOELECTRONICS USA, INC., CHUNGHWA PICTURE TUBES, LTD., HANNSTAR DISPLAY CORPORATION, HANNSPREE NORTH AMERICA, INC., <br><br> Defendants. | § § § § § § § § § § § § § § CIVIL ACTION NO. 6:11-CV-00201-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs Eidos Display, LLC and Eidos III, LLC (collectively "Plaintiffs" or "Eidos") Motion to preclude Defendants' experts Jerzy Kanicki and Roger Stewart from testifying on opinions presented in their expert reports (Doc. No. 679). Defendants have filed responses (Doc. Nos. 700, 701), Plaintiffs have filed reply (Doc. No. 710) and Defendants have filed a sur-reply (Doc. No. 714). Upon, consideration, Plaintiffs' Motion (Doc. No. 679) **is GRANTED-IN-PART and DENIED-IN-PART** as set forth herein.

**BACKGROUND**

On April 12, 2013, this Court issued its claim construction opinion construing the disputed terms of U.S. Patent No. 5,879,958 ("the '958 Patent"). (Doc. No. 184.) During the original claim construction hearing, the Court previously had proposed a construction for the term "gate wiring" as "a patterned, electrically conductive material that conveys gate signals to

1

gate electrodes." (Doc. No. 184, at 12.) However, for reasons explained during the claim construction hearing, the Court declined to construe the term "gate wiring" in its original claim construction opinion. (Doc. No. 184, at 12.) Defendants then asked the Court to construe the term "gate wiring" to resolve a dispute amongst the experts regarding the interpretation of "gate wiring." (Doc. Nos. 520, 521.) The Court held another claim construction hearing at which both sides' experts testified regarding this dispute, and the Court rejected Defendants' proposal and adopted the following as the meaning of "gate wiring": "a patterned, electrically conductive material that conveys gate signals." (Doc. Nos. 580, 604.)

In construing this term, and taking in testimony, the Court found the experts ultimately dispute "whether the wire continuing beyond the terminal electrode conveys gate signals." (Doc. No. 580, at 11 citing Tr. at 61:3–62:1.) The Court further stated that this "factual dispute between the experts is one the Court cannot resolve as a matter of law from the intrinsic record" because "[n]othing in the intrinsic record provides any support to resolve the dispute regarding where the gate signal is conveyed." *Id.* However, the Court held as a matter of law that Defendants' proposal of "a patterned electrically-conductive material that connects and conveys gate signals from a gate wiring connection terminal to a gate electrode" is too limiting because it excluded a preferred embodiment. *Id.* at 12. It was for this reason, the Court rejected Defendants' proposal and construed the term "gate wiring" to mean "a patterned, electrically conductive material that conveys gate signals." *Id.*

In its original claim construction opinion, the Court also construed the term "metal film" to mean "a thickness of one or more layers of metal." (Doc. No. 184, at 15; Doc. No. 208.) Defendants later asked the Court to reconsider its construction of "metal film." (Doc. No. 502.)

The Court denied Defendants' motion for reconsideration. (Doc. Nos. 540, 566.) In doing so, the Court also rejected Defendants' contention that the term was indefinite, stating:

> [I]t must be well understood that the Court's construction of "metal film" is not unlimited with regard to the number of layers and types of metal that can be used to satisfy claim 1. Rather, a person of ordinary skill in the art when reading the '958 Patent would understand that the claimed "metal film" may consist of one or more layers of metal and that each layer may further be comprised of a variety of metal that is consistent with the disclosures in the '958 Patent, but not necessarily limited to those specific examples. It would be illogical to turn this conclusion on its head to say that any unlimited number of layers and combination of metals could be used, and that is not what this Court's construction contemplates.

(Doc. No. 540, at 6.)

Defendants, however, did not drop this argument, and came back to the Court seeking to belatedly supplement their invalidity contentions to add this theory. (Doc. No. 619.) Again, the Court explained that to the extent its "prior rulings were not sufficiently clear, the construction of 'metal film' to mean 'a thickness of one or more layers of metal' does not render claim 1 indefinite." (Doc. No. 641, at 3.) The Court again explained that while the '958 Patent discloses that the term "metal film" can be made of certain metals, it does not limit the term those specific metals. *Id.* at 3–4.

Eidos brings the instant motion arguing that both Dr. Kanicki and Mr. Stewart improperly replace the Court's constructions of "metal film" and "gate wiring" with their own narrow interpretations that have been rejected by the Court. (Doc. No. 679, at 4.)

## LEGAL STANDARD

Rule 702 provides that an expert witness may offer opinion testimony if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c)

3

the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed.R.Evid. 702.

The Rules also "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 594, 597 (1993). "The relevance prong [of *Daubert*] requires the proponent [of the expert testimony] to demonstrate that the expert's 'reasoning or methodology can be properly applied to the facts in issue.'" *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (quoting *Curtis v. M & S Petroleum, Inc.*, 174 F.3d 661, 668 (5th Cir. 1999)). "The reliability prong [of *Daubert*] mandates that expert opinion 'be grounded in the methods and procedures of science and . . . be more than unsupported speculation or subjective belief.'" *Johnson*, 685 F.3d at 459 (quoting *Curtis*, 174 F.3d at 668).

In assessing the "reliability" of an expert's opinion, the trial court may consider a list of factors including: "whether a theory or technique . . . can be (and has been) tested," "whether the theory or technique has been subjected to peer review and publication," "the known or potential rate of error," "the existence and maintenance of standards," and "general acceptance" of a theory in the "relevant scientific community." *Daubert*, 509 U.S. at 593–94; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999) ("*Daubert* makes clear that the factors it mentions do *not* constitute a 'definitive checklist or test.'"); *U.S. v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010). "The proponent need not prove to the judge that the expert's testimony is correct, but she must prove by a preponderance of the evidence that the testimony is reliable." *Johnson*, 685 F.3d at 459 (quoting *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc)). At base, "the question of whether the expert is credible or the opinion is

correct is generally a question for the fact finder, not the court." *Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015).

## DISCUSSSION

While Eidos filed a single motion with essentially the same arguments as to both experts, Dr. Jerzy Kanicki is Defendants Chi Mei Innolux Corporation and Chi Mei Optoelectronics Inc.'s ("Innolux") non-infringement expert, and Mr. Roger Stewart is Chunghwa Picture, Ltd. ("CPT") and HannStar Display Corporation and Hannspree North America, Inc.'s ("Hannstar") invalidity expert. Accordingly, the Court takes up the challenges to each expert's opinions in turn.

### 1. Dr. Kanicki

According to Eidos, Dr. Kanicki contends that Innolux does not infringe claim 1 because the "two-metal layers of Mo over Al" or the "three metal layers of Mo over Al over Mo [Mo/Al/Mo]" that Innolux uses for the "first metal film" and "second metal film," respectively, are not disclosed in or consistent with the teachings of the '958 patent. (Doc. No. 679, at 6–7, citing Doc. No. 679-1, at ¶¶ 21, 23, 25, 27, 31.) Eidos argues that in doing so, Dr. Kanicki is arguing Defendants' rejected position that the "first metal film" and the "second metal film" are limited to the preferred embodiments. (Doc. No. 679, at 10.) Therefore, Eidos argues that the Court should preclude Dr. Kanicki from offering any opinions that Innolux does not form a "first metal film" or "second metal film" of claim 1, pursuant to Federal Rules of Evidence 402, 403, and 702. *Id.* at 13. Innolux argues that Dr. Kanicki applied the Court's "consistent with" determination and "concluded that Dr. Schlam did not prove the metals in the accused products are consistent with the disclosures in the '958 patent," and that generally the metal films are not consistent with the "metal films disclosed in the '958 Patent as viewed by a person of ordinary skill in the art." (Doc. No. 701, at 10.)

5

Dr. Kanicki's opinions regarding "metal film" are simply a creative end run around the Court's claim construction. Effectively, Dr. Kanicki's opinions amount to nothing more than stating that the products do not infringe because they do not include the exact metal layers disclosed in the specification of the '958 Patent. The Court already held, on three different occasions, that the term "metal film" was not limited to these disclosures. (Doc. Nos. 184, 540, 566, 641.) To allow Dr. Kanicki to opine on the disclosures of the '958 Patent and argue that the accused products do not infringe because they do not contain the specific disclosures therein would only serve to effectively vitiate the Court's construction and create an improper non-infringement argument that risks confusion to the jury. As such, the Court agrees that Dr. Kanicki's opinions based on a "consist with" theory must be excluded. For this reason, Eidos's Motion (Doc. No. 679) is **GRANTED-IN-PART**. While Dr. Kanicki will not be permitted to argue non-infringement on the basis that the accused metal films are not "consistent with" the disclosures of the '958 Patent, Dr. Kanicki may testify generally regarding what materials were known and used in the art at the time of the invention, as well as what was being used in the industry, to the extent he has already disclosed such opinions.

As to "gate wiring," Eidos contends that Dr. Kanicki also argues that Innolux does not "form[] a contact hole reaching a gate wiring" because the electrostatic discharge ("ESD") pads and connections identified by Plaintiffs' expert Dr. Schlam are not part of the "gate wiring." (Doc. No. 679, at 13.) Eidos argues that Dr. Kanicki is limiting "gate wiring" to consist only of the metal layer between a gate electrode and gate pad, but not the gate electrode or gate pads themselves, because he erroneously believes the electrodes and pads only "receive" gate signals but do not "convey gate signals," as required by the claim. *Id.* Innolux contends that Dr.

Kanicki's opinions address the factual dispute the Court identified regarding "whether the wire continuing beyond the last electrode conveys gate signals." (Doc. No. 701, at 12.)

Having reviewed Dr. Kanicki's opinions, the Court finds that these opinions are permissible as they merely rebut Dr. Schlam's opinions and go to the factual dispute of whether the wiring conveys gate signals. As the Court has previously pointed out, this is a factual dispute between the experts regarding the operation of these structures. There is nothing in the intrinsic record for the Court to resolve this dispute as matter of law. Accordingly, Eidos's Motion (Doc. No. 679) is **DENIED-IN-PART** as to Dr. Kanicki's opinions on "gate wiring."

Finally, Eidos challenges Dr. Kanicki's opinions because Dr. Kanicki failed to examine relevant representative documents, admitting he has little knowledge of Innolux's actual process. (Doc. No. 679, at 17.) The sufficiency of Dr. Kanicki's review in preparing his opinions is a matter for cross-examination and the Court will not exclude his opinions on this basis. *See Summit* 6, 802 F.3d 1283 at 1296 ("[T]he question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court."). These arguments go to the weight of the evidence, not the admissibility of Dr. Kanicki's opinions, and therefore Eidos's Motion (Doc. No. 679) is **DENIED-IN-PART** as to this argument.

2. **Mr. Stewart**

Eidos contends that Mr. Stewart relies on the same erroneous interpretations of "metal film" and "gate wiring" as Dr. Kanicki. (Doc. No. 679, at 17–18.) Eidos contends that Mr. Stewart interpreted "gate wiring" to mean a conductive pathway to convey gate signals "to the gate electrode," and that "metal film," as construed by the Court, lacks enablement and written description. *Id.* Defendants argue that as to "gate wiring," Mr. Stewart's report was served before the Court construed the term "gate wiring," and that therefore Mr. Stewart opined on all

7

proposed constructions and stated his analysis does not change regardless of the construction. (Doc. No. 700, at 4.)

While the Court understands that Mr. Stewart's report was served before the Court adopted a construction of "gate wiring," and that Mr. Stewart contends his opinions remain unchanged irrespective, for the sake of clarity and to avoid any confusion to the jury, Mr. Stewart should amend his report to contain only his opinions based upon the construction the Court has since adopted. Accordingly, Eidos's Motion (Doc. No. 679) is **DENIED-IN-PART** as to Mr. Stewart's opinions regarding "gate wiring;" Mr. Stewart is **ORDERED** to amend his report within 14 days of the issuance of this Order to include the Court's construction of "gate wiring" only.

Finally, Eidos argues that Mr. Stewart's opinions ignore "the scope and significance of knowledge and experience of persons of ordinary skill in the art in discussing the patent's enablement and written description support for 'metal film.'" (Doc. No. 679, at 15.) Defendants contend that this single attack, which does not address any of Mr. Stewart's actual analyses, is unfounded and insufficient to exclude his opinions. (Doc. No. 700, at 5–6.)

The Court agrees that Eidos's motion is entirely unclear as to the basis for which it seeks to exclude Mr. Stewart's opinions on enablement and written description. While Eidos has failed to meet its burden by objecting in the form of a single conclusory sentence, the Court has reviewed Mr. Stewart's opinions (Doc. No. 679-13, at ¶¶ 127–34), and finds them permissible. Indeed, Mr. Stewart acknowledged and applied the Court's claim constructions and simply opinioned that the disclosures are inadequate. *Id.* This Court has not weighed in on the issues of written description or enablement, and Mr. Stewart will be permitted to opine on them based on

the opinions set forth in his expert report. Accordingly, Eidos's Motion (Doc. No. 679) is **DENIED-IN-PART** as to Mr. Stewart's invalidity opinions regarding the term "metal film."

## CONCLUSION

Consistent with the rulings set forth herein, Eidos's Motion (Doc. No. 679) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Within 14 days of the issuance of this Order, Dr. Kanicki and Mr. Stewart shall amend their reports consistent with the findings herein.

**So ORDERED and SIGNED this 1st day of April, 2017.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE