# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| EIDOS DISPLAY, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> CHI MEI INNOLUX CORPORATION AND CHI MEI OPTOELECTRONICS USA, INC. <br><br> Defendants. | Civil Action No. 6:11-CV-201-JRG-JDL |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court held a jury trial in this matter from June 26–30, 2017. (Dkt. No. 873.) On June 29th, 2017, after both sides finished presenting evidence to the jury and before the Court submitted to the jury those issues proper for its consideration, the Court conducted a bench trial outside the presence of the jury on Innolux's equitable estoppel defense. (Dkt. No. 782; Dkt. No. 852, 6/29/2017 P.M. Trial Tr. at 21:20–43:01.) After considering the Parties' evidence, arguments, and submissions related thereto, the Court now issues the following Findings of Fact ("FF") and Conclusions of Law ("CL").

## I. FINDINGS OF FACT ("FF")

### A. The Parties

**[FF1]** Plaintiffs Eidos Display, LLC and Eidos III, LLC (collectively "Eidos" or "Plaintiffs") are limited liability companies organized under the laws of Delaware. (Dkt. No. 782 at 17–18.)

**[FF2]** Defendant Chi Mei Innolux Corporation is incorporated under the laws of Taiwan with its principal place of business at No. 160, Kesyue Road, Jhunan Science Park, Miaoli County 350, Taiwan 74147, Republic of China. (*Id.* at 18.) Chi Mei Innolux Corporation was formed in 2010 by a merger of TPO Display Corporation, Innolux Display Corporation, and Chi Mei Optoelectronics ("CMO"). (Dkt. No. 849, 6/28/2017 A.M. Trial Tr. at 14:20–15:20.) Chi Mei Innolux Corporation is now known as Innolux Corporation. (*Id.*)

**[FF3]** Defendant Chi Mei Optoelectronics USA, Inc. ("CMO USA") is a subsidiary of Chi Mei Optoelectronics Japan Co., Ltd., and incorporated under the laws of Delaware with its principal place of business at 101 Metro Drive, Suite 510, San Jose, California 95110. (Dkt. No. 782 at 18.) CMO USA is now known as Innolux USA. (Dkt. No. 849, 6/28/2017 A.M. Trial Tr. at 9:19–11:20.)

### B. The '958 Patent.

**[FF4]** On April 25, 2011, Eidos filed the complaint in this case against Defendants Chi Mei Innolux Corporation and CMO USA (collectively "Innolux"). (Dkt. No. 1.) Eidos alleged that Innolux directly and indirectly infringed Claim 1 of U.S. Patent No. 5,879,958 (the "'958 Patent"). (*Id.* at ¶ 36–40.)

**[FF5]** The '958 Patent is entitled "Method of Producing an Electro-optical Device." (PX-001-001.) The '958 Patent issued on March 9, 1999. (*Id.*) The inventors listed on the '958 Patent are Ken Kawahata, Akira Nakano, Hirofumi Fukui, Hiroyuki Hebiguchi, Kenji Yamamoto, and Chisato Iwasaki. (*Id.*)

**[FF6]** The '958 Patent was assigned by the inventors to Frontec Inc. ("Frontec") on May 25, 1995. (PX-003-001.) Frontec was a joint venture between LG Philips LCD Co., Ltd.

(now known as LG Display Co., Ltd. ("LG")), and Alps Electric Co., Ltd. ("Alps"). (Dkt. No. 846, 6/26/2017 P.M. Trial Tr. at 150:13–20.)

**[FF7]** Effective December 1, 2000, Frontec assigned the '958 Patent to LG and Alps, as joint owners. (PX-004-001.)

**[FF8]** As part of this arrangement, LG could not assert the '958 Patent without consent from Alps. (Dkt. No. 846, 6/26/2017 P.M. Trial Tr. at 169:09–170:01 ("[W]ith 50 percent ownership of the patent, unless there is a consent from Alps, LGD was not in a position to do anything.").)

**[FF9]** On May 29, 2008, LG assigned its 50% ownership interest in the '958 Patent to Eidos Display. (PX-006-001.)

**[FF10]** On June 13, 2008, Alps assigned its 50% ownership interest in the '958 Patent to LG. (PX-007-001.)

**[FF11]** On August 26, 2008, LG assigned that remaining 50% ownership interest (originally held by Alps) to Eidos. (PX-008-001.)

**[FF12]** Thus, as of August 2008, Eidos held all right, title, and interest in the '958 Patent. (Dkt. No. 513 at 4–5 (concluding that Eidos is the owner of the '958 Patent and thus has standing to bring claims for infringement of such patent); Dkt. No. 552 (adopting this conclusion).) However, LG Display retained a right to receive 55% of the proceeds from licenses to the '958 Patent after certain costs were deducted. (PX-010)

### C. The Jury Trial

**[FF13]** On June 30, 2017, the jury returned a verdict finding that Innolux willfully infringed the '958 Patent. (Dkt. No. 862.) The jury also found that Innolux failed to prove that Claim 1 of the '958 Patent is invalid. (*Id.*) Finally, the jury awarded $4,100,000 in damages. (*Id.*)

### D. Findings of Fact With Respect to Equitable Estoppel

**[FF14]**  In June 2003, Chi Mei Optoelectronics Corp. ("CMO"), a predecessor company of Innolux, learned that one of its customers, Fujitsu, had "received patent infringement claims" from LG accusing products sold by Fujitsu and manufactured by CMO of infringing, *inter alia*, the '958 Patent. (PX-265; PX-266; *see also* Dkt. No. 848, 6/27/2017 P.M. Trial Tr. at 54:24–59:23 (discussing Exhibit 270 and Exhibit 271 admitted as PX-265 and PX-266).)

**[FF15]**  Fujitsu then requested that CMO "investigate" and provide an "opinion" regarding the "alleged relationship" between the '958 Patent and CMO's LCD modules. (PX-266.)

**[FF16]**  There is no evidence that CMO responded to Fujitsu's June 2003 request.

**[FF17]**  On August 4, 2003, Fujitsu sent a follow up email to CMO asking CMO to provide its "opinion materials" as Fujitsu had requested from CMO "at the last meeting." (PX-270.) CMO responded with respect to four of the patents that LG had identified in its original letter to Fujitsu, but CMO did not respond with respect to the '958 Patent. (*Id.*)

**[FF18]**  On August 14, 2003, Fujitsu indicated that it "[had] not received [CMO's] opinion for the '958 Patent yet" and requested that CMO provide an "opinion in view of both non-infringement and invalidity if you have it" with respect to the '958 Patent. (PX-271 at 4–5.)

**[FF19]**  There is no evidence that CMO responded to Fujitsu's August 14 letter requesting non-infringement or invalidity opinions from CMO with respect to the '958 Patent. (Dkt. No. 848, 6/27/2017 P.M. Trial Tr. at 66:11–14.)

**[FF20]**  Innolux did prepare two claim charts that reference Claim 1 of the '958 Patent. (PX-274 and PX-275.)

-4-

**[FF21]** One of these charts (PX-274) compares the '958 Patent and U.S. Patent 5,166,085 ("the '085 Patent"), which is identified as a prior art reference on the face of the '958 Patent. (*Id.*) Innolux did not identify the '085 Patent as a relevant prior art reference in this case.

**[FF22]** The other chart (PX-275) includes the following three notations along with Claim 1 of the '958 Patent: (1) "CMO has not been notified regarding this ['958] patent," (2) "CMO follows the design spec. provided by Fujitsu," and (3) "CMO suggests doing prior art search." (*Id.*)

**[FF23]** Innolux's witness, Mr. Lee, testified that Innolux "believes" it provided these charts to Fujitsu, though he admitted that he does not know when, if at all, these charts were produced. (Dkt. No. 848, 6/27/2017 P.M. Trial Tr. At 75:1–76:6.)

**[FF24]** There is no evidence of any further review, analysis, or diligence undertaken by CMO or Innolux regarding the '958 Patent before 2011.

**[FF25]** There is also no evidence of any further discussions between LG, Eidos, CMO, or Innolux concerning the '958 Patent before 2011. (*Id.* at 74:09–18.)

**[FF26]** In 2006, LG filed a patent infringement action against CMO asserting several patents, including U.S. Patent No. U.S. Patent No. 5,825,449 ("the '449 Patent"), U.S. Patent No. : U.S. Patent No. 5,019,002 ("the '002 Patent"), and U.S. Patent No. US Patent 4,624,737 ("the '737 Patent"). (DX-266.) This lawsuit was resolved in 2012 by a cross-license between LG and Innolux. (DX-308) However, neither the lawsuit nor the resulting cross-license involved the '958 Patent.

**[FF27]** Between 2003 and 2011, Innolux made investments in several fabrication facilities ("fabs") for the production of LCD products. (Dkt. No. 849, 6/28/2017 A.M. Trial Tr. at 17:20–19:15, 48:09–50:02; Dkt. No. 850, 6/28/2017 P.M. Trial Tr. at 141:06–09.)

**[FF28]** Between 2005 and 2015, Innolux sold products that encompassed the TFT arrays made using the five mask process that the jury found to infringe the '958 patent as well as numerous other products that were not accused of infringing the '958 Patent. (Dkt. No. 848, 6/27/17 P.M. Trial Tr. 156:5–22.)

**[FF29]** Innolux did not establish that the construction of fabs or sales of infringing products by Innolux arose because of any communication, conduct, inaction, or silence by LG or Eidos.

**[FF30]** Innolux also did not establish that Innolux (or CMO) formed any belief that any infringement claim for the '958 Patent, against Innolux or CMO, was abandoned or that such belief was the basis of any actions that Innolux took.

**[FF31]** Some witnesses testified that documents which may have existed, such as e-mails and licensing agreements, no longer exist and thus could not have been presented at trial. (Dkt. No. 848, 6/27/2017 P.M. Trial Tr. at 61:07–21, 63:08–17, 65:09–21, 78:18–82:1, 184:24–185:16; Dkt. No. 849, 6/28/17 A.M. Trial Tr. At 37:21–39:16.) However, Innolux did not identify any specific documents that definitely existed, was relevant to their defense, and did not exist any longer because of the passage of time from either 2003 (when Innolux learned of the '958 Patent from Fujitsu) or 2008 (when Eidos acquired the '958 Patent).

**[FF32]** Similarly, some witnesses testified that potentially relevant witnesses, such as the CMO individuals who were contacted by Fujitsu and who prepared charts relating to the '958 patent in 2003, no longer work at Innolux. (Dkt. No. 848, 6/27/2017 P.M. Trial Tr. at 80:6–17.) However, Innolux did not establish that Innolux contacted or attempted to contact these former employees or third parties to procure their testimony for trial.

## II.　CONCLUSIONS OF LAW ("CL")

**[CL1]**　Equitable estoppel is a complete defense to a patent infringement claim. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992) (en banc), *abrogated on other grounds by SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954 (2017).

**[CL2]**　Equitable estoppel applies where (1) misleading conduct (or silence) leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer, (2) the alleged infringer relies on that conduct, and (3) due to this reliance, the alleged infringer is materially prejudiced because the patentee is allowed to proceed with its claim. *Aukerman*, 960 F.2d at 1042–1043.

**[CL3]**　Innolux must establish each of these elements by a preponderance of the evidence. *Id.* at 1046.

**[CL4]**　The determination of whether these elements are established is "committed to the sound discretion of the trial judge." *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013).

**[CL5]**　With respect to the first element, making an accusation of infringement and then "not follow[ing] up for years" may provide a basis for an equitable estoppel defense when such conduct is also "combined with *other facts* respecting the relationship or contacts between the parties . . . giv[ing] rise to the necessary inference that the claim against the defendant is abandoned." *Aukerman*, 960 F.2d at 1042 (emphasis added); *see also ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1064 (Fed. Cir. 1995) ("We agree with the trial court that CM's long period of inaction after GMF had denied infringement combined with the 'other factors' found by the trial court led GMF to reasonably conclude that CM did not intend to enforce

the '536 patent against it."); *Meyers v. Brooks Shoe Inc.*, 912 F.2d 1459, 1462 (Fed. Cir. 1990) ("[A] mere verbal charge of infringement, if made, followed by silence [is] not sufficient affirmative conduct to induce a belief that [Plaintiff] had abandoned an infringement claim."), *overruled on other grounds by Aukerman*, 960 F.2d 1020.

**[CL6]** *Deckers Outdoor Corp. v. Romeo & Juliette, Inc.*, No. 2:15-cv-02812, 2017 WL 2588065 (C.D. Cal. June 13, 2017), upon which Defendant relied, (Dkt. No. 852, 6/29/2017 P.M. Trial Tr. at 30:7–31:2), provides an instructive example of the sort of "other factors" that might, together with a long period of inaction, lead to the reasonable inference that infringement claims had been abandoned. In *Deckers*, the plaintiff sent a letter to the defendant identifying a particular product (Knit Tall boots), explaining how that product infringed the plaintiff's patent (the '650 Patent), and indicating that the plaintiff "intended to vigorously enforce its patent rights." 2017 WL 2588065 at *3. The plaintiff and defendant then engaged in "an ongoing and litigious relationship" involving trade dress claims against the same Knit Tall boots that the plaintiff had earlier identified as infringing. *Id.* Three years *after* settling these trade dress claims, and many years after originally accusing the Knit Tall boots of infringing, the plaintiff resurrected its claims under the '650 Patent against the Knit Tall boots products. *Id.* Under these circumstances, the district court granted summary judgment in favor of the defendant on its equitable estoppel defense. *Id.*

**[CL7]** Innolux has not established that comparable circumstances are present in this case. LG (as a predecessor to Eidos) and CMO (as a predecessor to Innolux) never communicated about the '958 Patent directly. [FF14–25]. Also, there is no evidence that the products, manufacturing methods, or patents at issue in the 2006 case are so related to the products, manufacturing method, and patent in this case such that merely filing the 2006 case suggested an

abandonment of the claim asserted here (relating to the '958 Patent). [FF26]. *See also Radio Sys. Corp.*, 709 F.3d at 1130 (reversing a district court for "treat[ing] two related patents as one for purposes of equitable estoppel" and because district court presumed that demand letter regarding first patent put defendant on notice with respect to second patent); *Deckers*, 2017 WL 2588065, at *5 (rejecting summary judgment with respect to a different patent and different products where defendant "fail[ed] to distinguish among the myriad one-button boot styles that are the subject of this infringement claim"). Further, there was no period after a settlement of earlier claims during which Plaintiff rested on its rights as in *Deckers*. In fact, the 2006 case between LG and CMO was resolved after this case was filed. [FF26].

**[CL8]** In *ABB Robotics*, another case relied on by Innolux, the plaintiff waited several years after initially accusing defendant of infringing its patents, which defendant repeatedly denied, before filing its claims. *ABB Robotics*, 52 F.3d at 1064; *see also ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 828 F. Supp. 1386, 1388 (E.D. Wis. 1993), *aff'd*, 52 F.3d 1062. There is no evidence here of a similar delay after discussions between LG (or Eidos) and CMO (or Innolux) regarding the '958 Patent. [FF14–FF25].

**[CL9]** Ultimately, there is no evidence in this case that the Parties, or their predecessors, communicated about the '958 Patent directly or extensively, *id.*, no evidence that Innolux seriously evaluated the '958 Patent thus forming some basis for reliance, [FF14–24, FF30], and no intervening or additional circumstances, besides the length of time between 2003 and 2011, suggesting that Innolux was free to infringe the '958 Patent. Accordingly, the Court concludes that Innolux failed to prove the first element of estoppel.

**[CL10]** With respect to the second element, Innolux "must show that, in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some

action." *Aukerman*, 960 F.2d at 1042–43. This requirement is "essential" to an equitable estoppel defense. *Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 776 (Fed. Cir. 1995).

**[CL11]** To carry its burden on the reliance element, Innolux needed to prove that it substantially relied on misleading conduct (or silence) "in taking some action, such as building a plant for producing the infringing product." *Id*.

**[CL12]** Innolux did not establish that it sold products, constructed facilities, or took any other action because of statements, silence, or any other conduct by Eidos or LG. [FF27–FF30]. At most, Innolux (and CMO) engaged in its ordinary course of business, including building fabs and making products in those facilities. *Id.*

**[CL13]** There is also no evidence that Innolux actually believed, after the 2006 lawsuit or at any other point, that LG had abandoned its claims with respect to the '958 Patent. At most, the evidence suggests that Innolux never seriously evaluated the '958 Patent. [FF24]. *See also Deckers*, 2017 WL 2588065 at *3 (reasonable reliance where the defendant offered to stop selling accused product earlier, plaintiff "ignored the offer" and "failed to assert any infringement claims" for several years); *Genband US LLC v. Metaswitch Networks Ltd*, 211 F. Supp. 3d 858, 900 (finding "no evidence of reliance" where infringer failed to conduct any analysis after learning of patent) *vacated on other grounds Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378 (Fed. Cir. 2017). Even if Innolux believed LG or Eidos had abandoned infringement claims based on the '958 Patent, such reliance would not have been reasonable because there is no evidence that the 2006 case suggested an abandonment of the claims asserted here (relating to the '958 Patent). [CL9].

**[CL14]** Accordingly, Innolux's equitable estoppel defense fails because Innolux has not established that it reasonably relied on misleading conduct or silence by Eidos or LG.

**[CL15]** The third element of the estoppel defense requires Innolux to show "that it would be materially prejudiced if the patentee is now permitted to proceed" on claims it earlier abandoned. *Aukerman*, 960 F.2d at 1043. Material prejudice "may be a change of economic position or loss of evidence." *Id.*

**[CL16]** Economic prejudice "may be shown by a change of economic position *flowing from* actions taken or not taken by the patentee." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1312–12 (Fed. Cir. 2010) (emphasis added). In particular, courts have found economic prejudice lacking when "the alleged infringer failed to prove that their increased expenditures" related to "actions taken by the patentee." *ABB Robotics*, 52 F.3d at 1065.

**[CL17]** Innolux has failed to establish any economic prejudice because it did not establish that it made investments or sales because of statements, silence, or other conduct by Eidos. [FF29–FF30]. With respect to economic prejudice, for example, Innolux's counsel argued that there was an "enormous investment that's been made by the company into these products." (Dkt. No. 852, 6/29/2017 P.M. Trial Tr. at 32:11–12.) However, no evidence in the record connects that economic investment to any misleading conduct or silence by Eidos or LG, [FF29], and therefore Innolux fails to satisfy its burden. *Aspex Eyewear*, 605 F.3d at 1312–13 ("[Defendant] failed to prove that their increased expenditures . . . were in any way related to actions taken by the patentee."); *Deckers*, 2017 WL 2588065 at *4 (concluding that the defendant "suffered clear economic prejudice *as a result of* Deckers' misleading conduct" (emphasis added)).

**[CL18]** Evidentiary prejudice "may arise by reason of a defendant's inability to present a full and fair defense on the merits due to a loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Aukerman*, 960 F.2d at 1033 (citations omitted).

**[CL19]** Innolux has failed to demonstrate evidentiary prejudice. It has not identified any specific, relevant evidence it was unable to obtain because of delay, if any, by LG or Eidos. [FF31–FF32]. *See also Deckers*, 2017 WL 2588065, at *4 (finding evidentiary prejudice where a specific, critical witness passed away before the lawsuit was filed). Instead, Innolux argued that its witnesses testified to "a loss of evidence" generally. (Dkt. No. 852, 6/29/2017 P.M. Trial Tr. at 31:10–24.) *But see Meyers*, 974 F.2d at 1308 (defendants failed to show prejudice, at least with respect to laches, through "[c]onclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence"). The Court recognizes that with the passage of time the knowledge of whether specific documents exist may be lost along with the documents themselves. However, Innolux's assertion that documents which might have existed no longer do, coupled with its conclusory arguments about a "loss of evidence," does not carry its burden to establish prejudice. *Meyers*, 974 F.2d at 1308. This is particularly true here because Innolux did not show that the evidence it believed might exist would have been available if this lawsuit had been filed before 2011. [FF31–FF32].

**[CL20]** Likewise, the naked possibility that witnesses who might be relevant are not available is not sufficient evidence of prejudice where, as here, the defendant does not show that it was unable to locate or procure testimony from these witnesses. [FF32].

**[CL21]** Having considered the potential for both economic and evidentiary prejudice, the Court concludes that Innolux failed to establish material prejudice as required to support its defense of equitable estoppel.

**[CL22]** Accordingly, for the reasons set forth above, the Court finds that the doctrine of equitable estoppel does not bar Plaintiffs' recovery of damages on any claim for infringement in this case and Innolux's defense of equitable estoppel is therefore **DENIED** and **DISMISSED**.

**So ORDERED and SIGNED this 8th day of December, 2017.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE