**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| EIDOS DISPLAY, LLC, EIDOS III, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 6:11-CV-00201-JRG** |
| | § | |
| CHI MEI INNOLUX CORPORATION, CHI | § | |
| MEI OPTOELECTRONICS USA, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following motions:  Plaintiffs' Motion for Enhanced Damages (Dkt. No. 876), Plaintiffs' Motion for Attorney's Fees (Dkt. No. 883), Plaintiffs' Motion for Pre/Post Judgment Interest (Dkt. No. 884), and Plaintiffs' Motion for Clarification and Entry of Judgment (Dkt. No. 882).

On January 31, 2018, the Court held a hearing at which the Parties presented oral argument on said motions.  After considering the briefing and argument of the Parties, and for the reasons set forth below, the Court finds that Plaintiffs' Motion for Enhanced Damages should be **GRANTED-AS-MODIFIED**, that Plaintiffs' Motion for Attorney's Fees should be **DENIED**, that Plaintiffs' Motion for Pre-Judgment and Post-Judgment Interest should be **GRANTED**, and that Plaintiffs' Motion for Clarification and Entry of Judgment is **GRANTED-AS-MODIFIED**.

# I. **Background**

On April 25, 2011, Plaintiffs Eidos Display, LLC and Eidos III LLC (collectively, "Eidos") filed this case asserting infringement of U.S. Patent No. 5,879,958 ("the '958 Patent") against Defendants AU Optronics Corporation, AU Optronics Corporation America, Chi Mei Innolux Corporation, Chi Mei Optoelectronics USA, Inc., Chunghwa Picture Tubes, LTD, HannStar Display Corporation, and Hannspree North America, Inc. (Dkt. No. 1.)

## A. **Phase 1: The '958 Patent is Found Indefinite**

This case was initially referred to Magistrate Judge Love, with trial set before District Judge Leonard Davis on January 13, 2014. (Dkt. No. 82.) On September 13, 2013, Defendants filed, *inter alia*, a Motion for Summary Judgment of Indefiniteness. (Dkt. No. 314.) On December 3, 2013, Magistrate Judge Love recommended that this motion be granted. (Dkt. No. 412.) That recommendation was adopted, over objection, by Judge Davis, on January 22, 2014. (Dkt. No. 419.)

Eidos timely appealed the grant of summary judgment to the Court of Appeals for the Federal Circuit. (Dkt. No. 420.) On March 10, 2015, the Federal Circuit reversed the indefiniteness finding and remanded this case for further consideration. *Eidos Display, LLC v. AU Optronics Corp.*, 779 F.3d 1360, 1361 (Fed. Cir. 2015). In particular, the Federal Circuit held that Eidos' proposed definition sufficiently reflected how a person of ordinary skill in the art would have understood the limitation "a contact hole for source wiring and gate wiring connection terminals." *Id.* at 1364–68.

### B.  Phase 2: The Remanded Case Proceeds to Trial

After remand, the case was set for jury selection on November 7, 2016. (Dkt. No. 575.) However, on March 8, 2016, Eidos informed the Court that it had filed for bankruptcy.  (Dkt. No. 582.)  The case was then stayed.  (Dkt. No. 590)

On September 14, 2016, with the stay lifted, a new Docket Control Order was entered by this Court.  The case was again referred to Magistrate Judge Love and set for trial before the undersigned on June 26, 2017.  (Dkt. No. 597.)  As this case again proceeded toward trial, various defendants settled.  (Dkt. No. 555 (dismissing AU Optronics Corporation and AU Optronics Corporation America); Dkt. No. 819 (dismissing HannStar Display Corporation and Hannspree North America, Inc.); Dkt. No. 816 (severing Chunghwa Picture Tubes, Ltd. in Case No. 6:17-cv-349); Case No. 6:17-cv-349, Dkt. No. 27 (dismissing Chunghwa Picture Tubes, Ltd.).)  In the end, only Chi Mei Innolux Corporation and Chi Mei Optoelectronics USA, Inc. (collectively, "Innolux" or "Defendants") remained.

The case then proceeded to trial against the remaining Innolux defendants.  On June 30, 2017, the jury returned a verdict finding that Innolux willfully infringed the '958 Patent.  (Dkt. No. 862.)  The jury also found that Innolux failed to prove that Claim 1 of the '958 Patent was invalid.  (*Id.*)  Finally, the jury awarded $4,100,000 in damages. (*Id.*)

### C.  Phase 3: Post-Trial

After the jury returned its verdict, the Court entered a Post-Verdict Docket Control Order. (Dkt. No. 879.)  Pursuant to this Order, Plaintiffs filed a Motion for Enhanced Damages (Dkt. No. 876), a Motion for Attorney's Fees (Dkt. No. 883), a Motion for Pre/Post Judgment Interest (Dkt. No. 884), and a Motion for Clarification and Entry of Judgment (Dkt. No. 882).

On December 8, 2017, the Court also entered its Findings of Fact and Conclusions of Law denying and dismissing Innolux's equitable estoppel defense. (Dkt. No. 895.)

## II.     Plaintiffs' Motion for Enhanced Damages (Dkt. No. 876)

Under 35 U.S.C. § 284, "[d]istrict courts enjoy discretion in deciding whether to award enhanced damages, and in what amount." *Halo Elecs., Inc. v. Pulse Elecs, Inc.*, 136 S. Ct. 1923, 1932 (2016). However, enhanced damages are nevertheless "designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior," reserved for cases in which the defendant's conduct is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.*

In exercising this discretion to award enhanced damages for willfulness, courts frequently look to the factors articulated in *Read Corp. v. Portec, Inc*., 970 F.2d 816, 827 (Fed. Cir. 1992); *see also Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 111 (E.D. Tex. 2017) (noting that "courts before and after *Halo*" have relied on *Read*). The *Read* factors include: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) closeness of the case; (6) duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for harm; and (9) whether the defendant attempted to conceal the misconduct. *Read*, 970 F.2d at 827.

Here, unsurprisingly, Plaintiffs argue that the *Read* factors "overwhelmingly weigh in favor of enhancement." (Dkt. No. 876 at 11.) Defendants, on the other hand, argue the opposite. (Dkt. No. 878 at 10.) The Court discusses each applicable *Read* factor below.[1]

---

[1] Defendants also argue that no enhancement is warranted here because the jury's willfulness finding is unsupported by substantial evidence. (Dkt. No. 878 at 6 ("For at least these reasons, the willfulness finding is not supported by the

## 1. **Deliberate Copying**

Eidos concedes that "there is no evidence of affirmative copying in the record." (Dkt. No. 876 at 11). This factor does not favor enhancement.

## 2. **Lack of Investigation or Good-Faith Belief of Non-Infringement/Invalidity**

Innolux argues that this factor does not favor enhancement because Innolux was never directly informed about the '958 Patent by Eidos or LG (Eidos' predecessor in interest), and thus Innolux could not have identified with specificity how it allegedly infringed the '958 Patent. (Dkt. No. 878 at 14–14.) Innolux further argues that after it indirectly learned about the '958 Patent from one of its suppliers, it prepared invalidity charts which formed the basis of a good-faith belief that the patents were invalid. (*Id.*) To further support this argument, Innolux points out that the same prior art cited in their invalidity charts was later considered by the PTO as part of an ultimately unsuccessful reexamination proceeding. (*Id.*) Innolux also argues that it had a good-faith belief "that it would not be sued on the '958 patent" because LG did not initially bring suit against Innolux after contacting Innolux's supplier. (*Id.*)

Eidos argues that Innolux never formed a good-faith non-infringement or invalidity position, pre-suit or otherwise. (Dkt. No. Dkt. No. 876 at 6–8.) With respect to the invalidity charts in particular, Eidos argues that these were "conclusory" and "prepared without doing any analysis of the '958 Patent." (*Id.* at 2 n3.) Eidos also maintains that Innolux's defenses presented at trial were "contrived," and in some cases were "contrived" for the first time several years after the case was filed. (*Id.* at 6–8.) For example, Eidos relies heavily on the testimony of Dr. Kanicki,

---

evidence, much less of such an egregious nature that it warrants enhanced damages.").) At this point, the Court declines to disrupt the jury's willfulness finding in deciding whether enhancement is appropriate. *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("We do not interpret *Halo* as changing the established law that the factual components of the willfulness question should be resolved by the jury."); *see also* Fed. R. Civ. P. 50(b).

who admitted on the stand that his written description opinion was "wrong," a defense which Innolux withdrew after that admission. (*Id.* at 7–8.)

Beginning with Innolux's pre-suit investigation, the Court has already found that Chi Mei Optoelectronics Corp. ("CMO"), a predecessor of Innolux, learned about the '958 Patent in 2003, when one of its customers, Fujitsu, informed CMO that it had "received patent infringement claims" from LG accusing products sold by Fujitsu and manufactured by CMO of infringing, *inter alia*, the '958 Patent. (Dkt. No. 895 at 4–5.) Also, the Court has already found that there is no evidence CMO "seriously evaluated the '958 Patent," even after Fujitsu repeatedly asked CMO to undertake a serious analysis. (*Id.* at 9.); *see also Fractus, S.A. v. Samsung Elecs. Co.*, 876 F. Supp. 2d 802, 848 (E.D. Tex. 2012) ("While Fractus did not send a letter to Samsung . . . Samsung was on notice regarding Fractus's patents and failed to thoroughly investigate."). In reaching such conclusion, the Court explained why the invalidity charts Innolux relies on now do not show that CMO or Innolux formed a good-faith invalidity position before the filing of this lawsuit. (Dkt. No. 985 at 4–5.) If anything, these charts are evidence of the *absence* of a good-faith pre-suit investigation in spite of Innolux recognizing that such an investigation was warranted. For example, one chart includes the notation "CMO suggests doing prior art search." (*Id.* at 5.) Innolux's argument that these charts evidence a well-reasoned invalidity position because the single reference[2] cited was also considered by the PTO in reexamining the '958 Patent is not persuasive. *See, e.g., Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1324 (Fed. Cir. 2014) (noting that Federal Circuit precedent "has often warned of the limited value of actions by the PTO" in assessing whether an infringer formed a good-faith belief that the asserted claims were invalid); *K-TEC, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1378 (Fed. Cir. 2012) (affirming a finding of

---

[2] This reference was U.S. Patent No. 5,166,085, which was listed among the References Cited in the '958 Patent.

willfulness and enhanced damages even though the USPTO found that certain prior art references reviewed by defendant raised a substantial new question of patentability sufficient to initiate reexamination proceedings).[3]

The Court is also not persuaded that LG's/Eidos' "delay" in bringing this lawsuit gave rise to a good faith belief of non-infringement or invalidity. First, as this Court has already found, "[t]here is also no evidence that Innolux actually believed, after the 2006 lawsuit or at any other point, that LG had abandoned its claims with respect to the '958 Patent." (*Id.* at 10.) However, even if Innolux believed it might not be sued, this reflects, at best, a hope that it might get away with infringing. Such a hope falls short of being a genuine non-infringement or invalidity belief.

Accordingly, the Court is not persuaded that Innolux undertook any meaningful pre-suit investigation or that it formed, prior to this lawsuit, any reasonable non-infringement or invalidity positions. However, it should be noted that during this lawsuit, Innolux did not advance frivolous or bad-faith arguments. Indeed, at one point Innolux was the prevailing party in this case. Nevertheless, the lack of a meaningful pre-suit investigation favors enhancement. *See, e.g., Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co.*, 203 F. Supp. 3d 755, 764 (E.D. Tex. 2016) (enhancement warranted where "Defendants never undertook any serious investigation to form a good-faith belief as to non-infringement or invalidity"); *Creative Internet Advert. Corp. v. Yahoo! Inc.*, 689 F. Supp. 2d 858, 871 (E.D. Tex. 2010) (lack of "adequate investigation" pre-suit favor enhancement); *Apple Inc. v. Samsung Elecs. Co.*, 258 F. Supp. 3d 1013, 1032 (N.D. Cal.

---

[3] Innolux also argues that its general suspicions about the validity of the '958 Patent were confirmed by this Court's initial grant of summary judgment, which was reversed by the Federal Circuit. (Dkt. No. 878 at 14 ("[T]he suspect validity of the '958 patent was again confirmed by this Court when it granted summary judgment of invalidity [for indefiniteness].").  However, Innolux did not present any evidence that it formed an opinion about indefiniteness before this lawsuit was filed.  Accordingly, it cannot rely on the indefiniteness finding to bolster its asserted pre-suit investigation.

2017) ("The absence of evidence of an adequate investigation . . . weighs in favor of enhanced damages.").

### 3. **Litigation Conduct**

Eidos argues that an enhancement is warranted in this case because of Innolux's conduct in litigating this case, in particular its conduct during discovery. As an example, Eidos argues that Innolux waited to produce documents until the end of the discovery period, culminating in a "'dump' of mostly irrelevant documents from prior document productions, re-purposed from other unrelated cases." (Dkt. No. 876 at 3.) Eidos also argues that Innolux deliberately hid potentially infringing products from Eidos by identifying an incomplete list of accused mask files, which Eidos relied on in conducting its initial round of Rule 30(b)(6) depositions. (*Id.*) According to Eidos, this was part of a "pattern of other discovery misconduct," including failing to answer interrogatories, refusing to resolve discovery disputes until moments before hearings on motions to compel, issuing deficient third-party subpoenas, and refusing to produce witnesses for depositions in Taiwan even though the trial team had flown to Taiwan to take the depositions. (*Id.* at 4.) Going further, Eidos argues that Innolux also raised meritless defenses, including the written description defense that it eventually withdrew at trial as well as a marking defense that could not have been applicable in this case because the '958 only includes a single method claim. (*Id.* at 4–6.)

Of course, Innolux disputes Eidos' characterization of its litigation conduct. For example, Innolux argues that it did not identify *all* of the potentially infringing mask files because the Parties agreed that Innolux would only produce a representative sample of mask files. (Dkt. No. 878 at 7 (citing Dkt. No. 228).) Innolux also disputes that it refused to answer interrogatories or that it

issued defective subpoenas.[4]  With respect to the depositions, Innolux points out that the depositions in Taiwan did in fact go forward, albeit over Innolux's objection.  (*Id.* at 8 (citing Dkt. No. 176 (hotline discovery order)).)

In looking at the case as a whole, the Court is persuaded that Innolux fell short of its discovery obligations in this case.  (*See, e.g.,* Dkt. No. 804 ("[T]he record reflects that Defendants were far from perfect in conducting discovery in this matter.")).  Indeed, Innolux *twice* agreed to pay fees to Eidos, which it incurred in bringing motions to compel additional discovery.  (*See, e.g.*, Dkt. No. 567 (agreeing to pay fees for Eidos' motion to compel); (Dkt. No. 214 at 2 (same).)  Moreover, although Innolux argues that the mask files it provided were *representative* rather than *complete* by agreement, this misses the important point that when Eidos did eventually request a complete list, Innolux represented that the list it had provided was complete.  In fact, the Court specifically asked Innolux's counsel: "[Eidos] want[s] a list of five mask products, a full list with all version numbers.  Where do you stand on that?"  (Dkt. No. 876-1 at 21:16–18.)  Innolux's counsel replied: "[W]e gave them a list of 400 plus products, and *those are the products*. The problem is they don't like the number, and *I can't do anything about that*."  (*Id.* at 21:19–21 (emphasis added).)  The Court continued: "Well, the question is, is this a *full list of all five mask products*?"  (*Id.* at 22:4–6 (emphasis added).)  Innolux again replied: "That's what my understanding is."  (*Id.*)  Nevertheless, shortly thereafter, Innolux disclosed *thousands* of additional five-mask models in two additional waves of production.  (Dkt. No. 876 at 3.)

---

[4] In particular, Innolux argues that the subpoena identified by Eidos in its Motion related to a third party who eventually agreed to produce documents once Innolux and the third party worked out an agreement on the location for the production of documents.  (Dkt. No. 878 at 8.)

Although the Court was not persuaded that Innolux's conduct in this case warranted an adverse jury instruction,[5] (Dkt. No. 804), the record is replete with instances of Innolux engaging in improper or wasteful discovery conduct, including waiting until moments before hearings to resolve disputes.[6] (*See, e.g.,* Dkt. No. 876 at 4–5).  This sort of conduct favors enhancement.  *See, e.g., i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 859 (Fed. Cir. 2010) ("Typically, 'litigation misconduct' refers to bringing vexatious or unjustified suits, *discovery abuses*, failure to obey orders of the court, or *acts that unnecessarily prolong litigation*." (emphasis added)), *aff'd*, 564 U.S. 91 (2011).

### 4. Size and Financial Condition

There is no dispute that Innolux is a large company with billions in revenue.  Thus, this factor favors enhancement.  *See, e.g. id.* at 858–859 ("For factor 4, which considers the infringer's size and financial condition, the district court found that the jury's award, while 'substantial,' was only a small fraction of Microsoft's profits from the sale of Word products . . . Under the *Read* factors, the district court properly considered Microsoft's size and financial condition [in awarding an enhancement] . . . .").

### 5. Closeness of the Case

Eidos argues that "[t]his case was not close." (Dkt. No. 876 at 13.)  In particular, Eidos argues that several of Innolux's witnesses "conceded the lack of merit in Innolux's non-infringement and invalidity defenses." (*Id.*)  For example, according to Eidos, one of Innolux's

---

[5] The Court views the prejudicial impact of such an adverse instruction to ordinarily be so strong as to mitigate against employing this option in all but the most extreme situations.

[6] Of course, the Court encourages Parties to resolve disputes by agreement and doing so just before or at a hearing is always not indicative of bad faith.  However, a pattern of resolving disputes at the last minute can be indicative of gamesmanship stemming from an intentional failure to meaningfully meet and confer with opposing counsel, which both Parties have an obligation to do under the Local Rules.  The Court is persuaded such gamesmanship occurred in this case.

witnesses "admitted that Innolux did practice the claim step that Innolux attempted to dispute." (*Id.* (citing Dkt. No. 855, 6/28/2018 A.M. Sealed Trial Tr. at 15–21).)

Innolux argues that this was a close case because it was the prevailing party at one point. (Dkt. No. 878 at 14–15.) Even after this favorable decision was reversed, Innolux maintains that it continued to advance meritorious non-infringement and invalidity positions. (*Id.*)

The Court agrees with Innolux. As explained above, Innolux actually prevailed in this case before Eidos was vindicated at the Federal Circuit. Innolux then advanced several meritorious defenses, including its equitable defense, at trial.[7] Ultimately, the Court is persuaded that this case was sufficiently close such that this factor does not, in and of itself, favor enhancement.

### 6. Duration of Misconduct

Innolux and its predecessors have been on notice of the '958 Patent since at least 2003. (Dkt. No. 895 at 4–5.) However, Innolux argues that the duration of its infringement should not favor enhancement because the length of time between this notice and the instant lawsuit was elongated vis-a-vis LG's and Eidos' delay in filing this case. (Dkt. No. 878 at 15).

Eidos argues that an enhancement is warranted because Innolux, not Eidos, is responsible for Defendants' ongoing infringement through 2015, when the '958 Patent expired. (Dkt. No. 876 at 14 (citing *Arctic Cat Inc. v. Bombardier Recreational Prod., Inc.*, 198 F. Supp. 3d 1343, 1353 (S.D. Fla. 2016), *aff'd*, 876 F.3d 1350 (Fed. Cir. 2017)).)

The Court agrees with Eidos and finds that *Arctic Cat* is instructive in this case. In *Arctic Cat*, the defendant "began infringing the Arctic Cat patents in 2004." *Arctic Cat*, 198 F. Supp. 3d at 1353. The defendant then launched additional products incorporating the accused technology in 2009. *Id.* Eventually, the plaintiff filed suit on October 16, 2014. *Id.* at 1354 n.11.

---

[7] As explained above, not all of its defenses were meritorious. However, that does not automatically mean the case as a whole was not close.

Nevertheless, the district court held that in considering the duration from 2004 to 2014, the plaintiff's supposed delay in bringing the underlying lawsuit was "a red herring." *Id.* at 1353. As the district court aptly explained: "Any delay by Arctic Cat—and the Court has already determined on two occasions that the delay in this case is insufficient to support a laches defense—was not the cause of BRP's infringement. BRP is responsible for its own actions." *Id.* The same is true in this case. Innolux is responsible for its own actions, including failing to meaningfully investigate the '958 Patent while continuing to infringe it for several years. This conduct supports an enhancement in this case.

### 7. <u>Lack of Remedial Action</u>

There is no real dispute that Innolux did not take any remedial action after learning of the '958 Patent. At most, Innolux argues that "no remedial action was warranted" because it only found out about the '958 Patent through one of its customers. (Dkt. No. 878 at 15 ("For the same reasons given above for the duration of the alleged misconduct, no remedial action was warranted. At worst, this factor is neutral.").) The Court disagrees, and so did the jury in its finding of willfulness. Accordingly, this factor favors enhancement.

### 8. <u>Motivation for Harm</u>

Eidos argues that Innolux had a motivation to harm Eidos by virtue of its "motivat[ion] to infringe" the '958 Patent and Innolux's competitive relationship with Eidos' predecessor in interest, LG. (Dkt. No. 876 at 14–15); *see also Apple*, 258 F. Supp. 3d at 1035–36 (infringing conduct by competitor to gain "competitive edge" over another supports enhancement).

While Eidos argues that "Innolux gained financial and competitive advantages by infringing the '958 Patent," (Dkt. No. 876 at 14), the Court is not persuaded that this factor favors enhancement in this case. Ultimately, the record lacks evidence that Innolux gained some specific

"competitive edge" over LG or Eidos in the marketplace by infringing the '958 Patent.  The record also lacks any indication that Innolux carried on its infringing conduct to gain such an edge or to harm LG or Eidos.  Instead, to the careful reader this record suggests that Innolux gave little, if any, thought to the '958 Patent.  (*See, e.g.,* Dkt. No. 895 at 4–5.)

### 9.  Attempts to Conceal Misconduct

Eidos argues that Innolux's various discovery abuses evidence an attempt to conceal its infringement.  The Court disagrees.  There is no evidence that Innolux attempted to conceal its infringing course of conduct from LG, Eidos, or anyone else.  *See, e.g., Kowalski v. Mommy Gina Tuna Res.*, No. CIV. 05-00679-BMK, 2009 WL 855976, at *3 (D. Haw. Mar. 30, 2009) ("Defendants' response to discovery in this case was not always timely or complete . . . However, Defendants made no effort to conceal their *infringing operation*. Therefore, this factor is neutral as to awarding enhanced damages." (emphasis added)).  Moreover, the Court has already given weight to Innolux's discovery conduct in the enhancement analysis.  *See* Section II.A.3; *see also Barry*, 250 F. Supp. 3d at 118 ("There is no evidence that Medtronic took steps to conceal its infringement, certainly none that has not otherwise been taken into account in the court's analysis.").

### 10. Overall

Ultimately, the Court concludes that the totality of the circumstances in this case, including the jury's finding of willfulness, warrant an enhancement.  In particular, Innolux went several years without seriously evaluating the '958 Patent even after repeated requests from a customer that it do so.  When Eidos brought this suit to vindicate its rights in the '958 Patent, Innolux responded by repeatedly failing to disclose information, or only disclosing information after protracted disputes.

Considering Innolux's conduct under these circumstances, the Court finds that an enhancement of $4.1 million, in addition to the $4.1 million awarded by the jury, is appropriate in this case. *See Barry*, 250 F. Supp. 3d at 119 (awarding enhancement below treble damages where only some *Read* factors favored enhancement and collecting cases for the proposition that "[e]nhancing but not trebling damages based on a lesser degree of egregiousness is well supported by precedent").

### III.   Plaintiffs' Motion for Attorney's Fees

Under 35 U.S.C. § 285, a court "may award reasonable attorney fees to the prevailing party" in "exceptional cases." An "exceptional" case under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1751 (2014). Ultimately, the exceptionality determination is made on a "case-by-case" basis based on "the totality of the circumstances." *Id.*

Eidos argues that it is the prevailing party and that this case is exceptional because Innolux repeatedly abused the discovery process and advanced meritless arguments. (Dkt. No. 883 at 4–8, 10–12.) In this respect, Eidos' argument for attorney's fees mirrors and repeats its argument, discussed above, that an enhancement is warranted in this case because of Innolux's litigation conduct. *See* Section II.3.

In response, Innolux incorporates its positions with respect to the motion for an enhancement.[8] (Dkt. No. 888 at 12 ("For the sake of brevity, Innolux's full responses to these issues are set forth in its opposition to the enhanced damages motion (and hereby incorporated).").)

---

[8] Innolux spends the remainder of its response arguing that the fees sought by Eidos are unreasonable. Given that the Court is denying an award of fees altogether, the Court need not address this argument.

Having reviewed the Parties' arguments, the Court agrees that Eidos is the prevailing party in this case, but the Court does not agree that this is an exceptional case.

While Innolux was not entirely transparent throughout the discovery process, its conduct, in and of itself and in the context of the case as a whole, was not exceptional. (*See, e.g.,* Dkt. No. 804 (denying adverse jury instruction based on Innolux's discovery conduct).) Additionally, Innolux's discovery conduct has already been incorporated into the Court's enhancement analysis. *See* Section II.3; *Barry*, 250 F. Supp. 3d at 121 (discussing the risk of "inadvertently penalize[ing]" a party "for the same 'culpable' conduct" in analyzing enhancement and attorney's fees).

Innolux's litigation positions were not objectively unreasonable or exceptional. In fact, Innolux was the prevailing party for a lengthy period of this case's procedural history. While Innolux did withdraw its laches and written description defenses late in the case, in both instances this occurred because new legal and factual circumstances arose. When Innolux withdrew its laches defense, it was because the Supreme Court made the defense inapplicable in patent cases. (Dkt. No. 878 at 10 n.7.) When Innolux withdrew its written description defense, it was because its expert unexpectedly admitted on the stand that the positions he had taken in his expert report were "wrong." (Dkt. No. 876 at 7–8.) Advancing arguments that are not objectively unreasonable and then withdrawing them shortly after they become objectively unreasonable is not exceptional conduct. *See e.g. Beckman v. Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989) (abandoning a claim or defense is not necessarily evidence of vexatious activity). Plaintiffs' remaining arguments about the merit of Innolux's litigation positions simply recycle disputes presented to the jury in this case. However, the exceptionality inquiry is not "intended to create a regime in which the merits of a patent case [are] decided twice: once on the issue of liability and a second time on the issue of the prevailing party's right to a fee award." *Trover Grp.,*

*Inc. v. Dedicated Micros USA*, No. 2:13-cv-1047-WCB, 2015 WL 4910875, at *3 (E.D. Tex. Aug. 17, 2015) (Bryson, J., sitting by designation). Setting aside Innolux's withdrawn defenses, Innolux presented several reasonable, albeit unsuccessful, defenses to the jury and the Court. Thus, its litigation conduct as a whole was not exceptional. *See, e.g., Charge Lion, LLC v. Linear Tech. Corp.*, No. 6:12-cv-769-JDL, 2014 WL 12612807, at *2 (E.D. Tex. Aug. 25, 2014) (concluding that a case is not exceptional where most of the arguments advanced by the losing party were reasonable even if some of the arguments advanced were unreasonable).

Finally, the only circumstances under which this case, as a whole, could arguably be said to be exceptional are those attributable to Eidos' own conduct. (*See, e.g.,* (Dkt. No. 659 (sanctioning Eidos for discovery abuses and various misrepresentations); Dkt. No. 837 (striking Plaintiffs' damages expert for the *fourth time*).) However, the Court declines to premise an exceptional case finding, which would result in an award of fees to Eidos, on Eidos' own conduct. The perverse incentive that would be created by such an approach is both obvious and pernicious.

Accordingly, the Court concludes that an award of attorney's fees is not warranted based on the totality of the circumstances in this case.

## IV.    **Plaintiffs' Motion for Pre-Judgment and Post-Judgment Interest**

Eidos argues that it is entitled to pre-judgment interest at the prime rate, compounded quarterly, from 2005. (Dkt. No. 884 at 1–2.). According to Eidos, such an award is the "standard practice" in this District. (*Id.*) Eidos also argues that it is entitled to post-judgment interest at the 1-year constant maturity Treasury yield (as published by the Federal Reserve). (*Id.* at 4.)

Innolux responds that Eidos is either not entitled to pre-judgment interest, or in the alternative that the rate should be reduced to reflect the fact that LG/Eidos "delayed" bringing this lawsuit from 2003, when Innolux first learned of the '958 Patent, until 2011. (Dkt. No. 887 at 4–

8.)  The alternative rate that Innolux proposes to account for this delay is the three-month T-Bill rate.  (*Id.* at 2, 8.)  With respect to post-judgment interest, Innolux does not argue that Eidos is not entitled to post-judgment interest at the statutory rate it requested.  (*Id.*)

At the outset, the Court rejects Innolux's argument that Eidos is not entitled to pre-judgment interest.  Ultimately, the cases Innolux relies on to advance its argument are readily distinguishable.  For example, in *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001), which Innolux relies on extensively, the Federal Circuit affirmed a district court's decision to not award pre-judgment interest where the plaintiff deliberately delayed filing a lawsuit for "self-serving" reasons, with significant prejudice to defendants.  246 F.3d at 1362.  This Court has made no such finding.[9]  (*See also* Dkt. No. 895 (rejecting Defendants' equitable estoppel claim).)  For the same reason, the Court rejects Innolux's argument that the appropriate interest rate should be reduced to reflect LG's or Eidos' "delay" in bringing this lawsuit.

Accordingly, the Court concludes that an award of pre-judgment interest based on the prime rate, compounded quarterly, is appropriate and reasonable based on the facts and circumstances of this case.  *See also Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-cv-1202-WCB, 2017 WL 2190055, at *8 (E.D. Tex. May 18, 2017) (Bryson, J., sitting by designation).  Such pre-judgment interest shall be applied to the Jury's damages award only,[10] but otherwise as calculated by Mr. Cobb from April 26, 2005 until the date of entry of Judgment.

---

[9] The reality is that the '958 Patent was initially assigned to Frontec, Inc., a joint venture between LG Philips LCD Co., Ltd. -3- (now known as LG Display Co., Ltd. ("LG")), and Alps Electric Co., Ltd. ("Alps").  (Dkt. No. 895 at 2–3.)  "As part of this arrangement, LG could not assert the '958 Patent without consent from Alps."  (*Id.* at 3.)  It was not until August 2008 that Eidos held all right, title, and interest in the '958 Patent.  (*Id.*)

[10] *See Sanofi-Aventis v. Apotex Inc.*, 659 F.3d 1171, 1184–85 (Fed. Cir. 2011) ("[P]rejudment interest can only be applied to primary or actual damage portion [of award] and not to the punitive or enhanced portion.").

## V. Plaintiffs' Motion for Clarification and Entry of Judgment

In addition to requesting the entry of Judgment, Plaintiffs seek "clarification of the Court's June 26 Order" regarding Plaintiffs' claim for indirect infringement. (Dkt. No. 882 at 1.)

On June 26, 2017, the first day of trial, the Court ruled that Eidos could not "present evidence during this trial regarding liability that they've alleged against Defendant concerning indirect infringement." (Dkt. No. 845 at 94:9–13.) At this point, the Court had stricken the report of Plaintiffs' damages expert, Mr. Cobb, *four times*. (*See, e.g.,* Dkt. No. 810 at 98:8–9 ("[The Court:] [T]his is a final opportunity for Mr. Cobb to do this correctly."); Dkt. No. 837.) Moreover, Plaintiffs had offered no other reliable evidence of damages. Against that backdrop, the Court concluded that presenting evidence of an indirect infringement claim without any evidence of damages was inappropriate because, in part, it would "invite confusion on the jury's part to submit an issue on liability regarding indirect infringement without a corresponding issue or question on damages regarding indirect infringement." (Dkt. No. 845 at 94:3–8.)

Plaintiffs argue that this ruling merely precluded them from presenting evidence, at a particular time, with respect to their indirect infringement claim. (Dkt. No. 900 at 62:6–15 ("[The June 26 Order] was a trial management order . . . So what we have here . . . [is] the absence of a determination on the merits of the inducement claim . . . .").) Thus, Plaintiffs request that the Court "schedule this case . . . for a jury trial on [Eidos'] inducement claim." (*Id.* at 65:1–5.)

Defendants argue that an additional trial is unnecessary because "the Court effectively dismissed Eidos' claim for induced infringement immediately prior to trial." (Dkt. No. 886 at 1.)

At the outset, Plaintiffs are correct that an important motivation for the June 26 Order was the avoidance of jury confusion. Allowing Plaintiffs to proceed on their indirect infringement claim, without any evidence of related damages, would have required submitting separate

questions on direct and indirect infringement, with only one corresponding damages question. Such a process would have inevitably confused the jury and invited subsequent disputes about the meaning and import of the resulting verdict. One of the critical functions of an engaged trial judge is to anticipate and avoid jury confusion.

However, the June 26 Order also reflected Eidos' inability to point to *any* reliable measure of damages. Thus, when the Court instructed Eidos that it could not proceed with its indirect infringement claim, Eidos had failed to prove "an indispensable part of [its] case" on which it bore the burden of proof. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In particular, Eidos had failed to adduce *any* reliable evidence establishing that it suffered an injury as a result of Innolux's indirect infringement. *Id.* at 560–561 (concluding that "hypothetical" or "conjectural" injuries do not confer Article III standing); *see also Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) ("A 'concrete' injury must . . . actually exist."). Instead, Eidos pointed to inadmissible and unreliable expert testimony.[11] At some point, such a failure of proof shifts from being an evidentiary problem to being a jurisdictional problem. *See, e.g., Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 513 F.3d 234, 240 (D.C. Cir. 2008) ("Public Citizen's statistics are simply not reliable for determining how many (if any) more accidents will likely occur with a 20–minute requirement rather than a one-minute requirement. Therefore, Public Citizen has not met its burden to establish standing for this claim."); *see also Lujan*, 504 U.S. at 561 ("[E]ach element [of Article III's standing requirements] must be supported in the same way as any other

---

[11] To the extent Plaintiffs might seek nominal damages for past infringement, which they have not done at any point during this case, courts have held that "appending a claim for nominal damages" cannot "manufacture Article III jurisdiction." *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1266 (10th Cir. 2004). This is particularly true where there is no risk of ongoing injury, as in this case. *Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, Georgia*, 868 F.3d 1248, 1264 (11th Cir. 2017) (holding that a "prayer for nominal damages [did] not save the case from dismissal" where there was no ongoing risk of injury); *Morrison v. Bd. of Educ. of Boyd Cty.*, 521 F.3d 602, 611 (6th Cir. 2008) (same). To the extent Plaintiffs might seek attorney's fees on their indirect infringement claim, an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990).

matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.").

Even viewing Innolux's alleged indirect infringement, in the past, as an injury in and of itself, there is no remedy the Court can provide for such injury at this point absent a reliable measure of past damages. The '958 Patent is expired. So, there is no ongoing infringement the Court can enjoin. There is no other ongoing reputational, business, dignitary, or property interest the Court can protect. There is simply no ongoing injury. The injury, if any, has already occurred, and yet Plaintiffs have failed to point to *any* reliable evidence that would support an award of damages to compensate for that injury.

Accordingly, since Eidos cannot reliably establish any measure of damages related to its indirect infringement claim, the indirect infringement claim is dismissed without prejudice, for lack of standing.

## VI. Conclusion

For the reasons set forth above, the Court rules as follows:

- Plaintiffs' Motion for Enhanced Damages is **GRANTED-AS-MODIFIED**, such that the appropriate enhancement in this case is $4.1 million, in addition to the $4.1 million awarded by the jury.

- Plaintiffs' Motion for Attorney's Fees is **DENIED**.

- Plaintiffs' Motion for Pre-Judgment and Post-Judgment Interest is **GRANTED**. Accordingly, the appropriate rate for pre-judgment interest is the prime rate, compounded quarterly, and the appropriate rate for post-judgment interest is the 1-year constant maturity Treasury yield rate (as published by the Federal Reserve).

- Plaintiffs' Motion for Clarification and Entry of Judgment is **GRANTED-AS-MODIFIED**. Plaintiffs' claim for indirect infringement is **DENIED WITHOUT PREJUDICE**.

The Court will enter final judgment concurrently herewith and consistent with the above.

**So ORDERED and SIGNED this 5th day of March, 2018.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE